IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Lauren Popovich | ) | |
| 6802 Gilbert Avenue | ) | JUDGE:   WELLS |
| Parma, Ohio  44129 | ) | |
| | ) | CASE NO.:   1:00 CV 3136 |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| Court of Common Pleas | ) | |
| Cuyahoga County | ) | |
| Domestic Relations Division | ) | |
| One Lakeside Avenue | ) | |
| Cleveland, Ohio 44113 | ) | |
| | ) | **SECOND AMENDED COMPLAINT** |
| Defendant. | ) | *(Jury Demand Endorsed Hereon)* |

Now comes Plaintiff, Lauren Popovich, by and through counsel and for her

Complaint states as follows:

## PRELIMINARY STATEMENT

1.     This action seeks compensatory damages, attorneys fees and costs for

discrimination against Lauren Popovich on the basis of Ms. Popovich's association with her

father, himself the victim of intentional discrimination and retaliation in violation of the

American with Disabilities Act during the pendency of two Domestic Relations matters before

the Cuyahoga County Court of Common Pleas, Domestic Relations Division.  This action seeks

damages to the Plaintiff, which arose by virtue of her association with an individual with a

disability and the resulting denial of her constitutional rights to due process and association with

her father.

2.     Plaintiff's father separately filed suit against defendant on March 23, 1995

alleging inter alia (1) failure to accommodate; and, (2) retaliation under the American with

Disabilities Act.  See *Popovich v Cuyahoga County Court of Common Pleas, Domestic Relations Division*, Case No. 1:95 CV 684.

3.     Mr. Popovich's litigation resulted in a verdict in his favor and an express finding against the defendant of intentional discrimination and retaliation.

4.     The Defendant appealed the verdict of the jury to the Sixth Circuit Court of Appeal.  See *Popovich v Cuyahoga County Court of Common Pleas, Domestic Relations Division,* COA CASE Nos. 98-4100, 98-4540.  The Sixth Circuit original reversed the decision of the District Court on September 18, 2000 on the basis that the 11th Amendment barred claims for money damages against the States under Title II of the ADA.  The full panel of the Sixth Circuit vacated that decision and concluded that Title II is valid prophylactic legislation pursuant to Congress authority under §5 of the 14th Amendment to the extent that it seeks to enforce the due process clause of the 14th Amendment.

## JURISDICTION

5.     This action arises under Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. Section 12131-12134; The Civil Rights Act of 1871.

6.     Jurisdiction over the federal issues is invoked pursuant to the following provisions of the United States Code:

A.     Title 28,       United States Code, section 1343(4).  This action arises under the of the Americans with Disabilities Act of 1990.

7.     Compensatory damages may be recovered against the Defendant pursuant to the express waiver of immunity set forth in 42 U.S.C. Section 12202.

8.     Costs and attorneys fees may be awarded pursuant to 42 U.S.C. Section 12111, *et seq.* and Rule 54 of the Federal Rules of Civil Procedure.

## VENUE

9.     This action properly lies in the Northern District of Ohio, Eastern

Division, pursuant to 29 U.S.C. Section 11391(b) and the local rules of the Northern District of

Ohio, because the claim arose in this judicial district, and pursuant to 42 U.S.C. Section 12111 *et

seq.*, because the unlawful discriminatory practices were committed in this judicial district.

## PARTIES

10.     Plaintiff, Lauren Popovich, is a citizen of Cuyahoga County, State of

Ohio.  Ms. Popovich is the daughter of Joseph Popovich, a former Defendant in two Domestic

Relations proceedings in the Court of Common Pleas, Domestic Relations Division.

11.     Plaintiff's father has a hearing deficiency and is disabled as defined under

the Americans With Disabilities Act.

12.     Defendant, The Court of Common Pleas, Domestic Relations Division

("the Court") is a court of law created by Ohio Revised Code Section 1907.01 for the purpose of

resolving Domestic Relations disputes.  The Court is funded in part by the treasury of the County

of Cuyahoga, the treasury of the State of Ohio and funding from the Federal Government.  The

Court is a public entity as defined by the Americans with Disability Act, 42 U.S.C. Section

12131(1).

13.     The Court, upon information and belief, is governed by the mandates of

the Rehabilitation Act, 29 U.S.C. §794 et. seq. By virtue of its receipt of federal funding.

## STATEMENT OF FACTS

14.     Plaintiff's date of birth is December 19, 1980.

3

15.     Plaintiff at all times relevant herein was the minor daughter of Joseph Popovich, a Defendant in two Domestic Relations actions pending before the Cuyahoga County Court of Common Pleas, Domestic Relations Division.  The first action (Cuyahoga County Case Number 90DR204505) involved motions and cross-motions for plaintiff's custody and visitation rights.  The second case (Cuyahoga County Case No. 92DR220623) involves a domestic violence complaint filed against Mr. Popovich by, among others, his ex-wife.  (Referred to as "custody case" and "domestic violence" case, respectively).

16.     Lauren Popovich was made a defendant in the "custody case" litigation by virtue of a Court Order date November 21, 1990.

17.     On or around August 11, 1992, as part of the custody proceedings, and during hearings wherein the Plaintiff's custody would be determined, Mr. Popovich's counsel informed the court that Mr. Popovich had trouble hearing certain tones and words.

18.     Thereafter, Mr. Popovich did suffer from difficulty understanding the proceedings because of a hearing disability.

19.     Mr. Popovich and his counsel attempted to resolve the hearing difficulties by contacting outside agencies for assistance.  Mr. Popovich contacted an audiologist at the Cleveland Hearing and Speech Center who advised Mr. Popovich of the requirements of the ADA pertaining to the courts obligations to provide auxiliary aids and services.

20.     The audiologist contacted the courts ADA coordinator to discuss the courts compliance with the ADA and attempt to obtain auxiliary aids and services for Mr. Popovich.  At that time, the court had no written policy on the provision of auxiliary aids and services other that the appointment of interpreters.

4

21.     On or around August 20, 1992, the ADA coordinator of the court informed Referee Gregory C. Fuss ("Referee Fuss") that allegations of discrimination had been raised relative to the courts compliance with the Americans with Disabilities Act.

22.     Referee Fuss recessed the case until the next morning so that he could consult with Judge Stanley Fisher, the presiding Judge over the case at the time, as to how to address the ADA concerns.

23.     The following morning on August 21, 1992, Referee Fuss announced that the proceedings would not go forward until the issues raise by Mr. Popovich relative to the ADA violations were resolved.  Mr. Popovich was ordered to undergo an audiological examination, at his own expense, to be conducted at the Cleveland Hearing and Speech Center that day.  A special hearing on the results of the examination was scheduled for August 25, 1992.

24.     After Mr. Popovich's examination, Referee Fuss contacted the audiologist who confirmed that Mr. Popovich has a moderate to severe hearing loss and informed the referee that an auxiliary aid or service would be necessary to provide effective communication with Mr. Popovich during any proceeding.

25.     On August 24, 1992, while the "custody case" was stayed, Mr. Popovich's ex-wife filed a petition of domestic violence with the court, requesting an *ex parte* temporary restraining order against Mr. Popovich.

26.     The following morning, the court conducted an ex parte hearing on the domestic violence petition and issued an *ex parte* order despite the presence of Mr. Popovich and his counsel at the courthouse.  The effect of the *ex parte* order was to remove Plaintiff from Mr. Popovich's home and to prohibit him from having any contact with her.

27.     The court ordered a copy of the transcript to be given to Mr. Popovich's counsel in preparation for a full hearing on the domestic violence petition.

28.     On August 25, 1992, a hearing on Mr. Popovich's audiological examination was conducted without the participation of Mr. Popovich, and the parties stipulated that Mr. Popovich had a hearing impairment that required "speech augmentation equipment" in order to ensure that he could hear the proceedings.

29.     The audiologist recommended using an FM system with a "pass around" microphone.

30.     However, Referee Fuss decided to utilize an FM amplification that used a centrally located microphone, believing that the "pass around" microphone recommended by the audiologist would not be convenient or might disrupt the proceedings.  It was stipulated by the parties that the court would see if the proposed system would work, and if not, a different system would be considered and implemented.

31.     On August 27, 1992, the court declared a mis-trial on the "custody case". At the same time, Judge Fisher voluntarily removed himself from the case "to preclude any impropriety or appearance of a conflict of interest" on his part.  The Administrative Judge, Timothy Flanagan, ultimately assigned the case to Judge Gallagher.

32.     From September 2, 1992 until October 23, 1992, Referee Maurice Schoby held hearings on the domestic violence petition.

33.     On September 11, 2002, Attorney Mark J. Hassett withdrew as counsel for Plaintiff in the "Custody Case" because Plaintiff was torn by her feelings for both parents.

6

34.     On or around September 1992, Plaintiff filed a charge of discrimination with the Department of Justice.  Thereafter, Mr. Popovich filed a charge of discrimination on behalf of his minor child Lauren Popovich.

35.     During these hearings the FM system, which utilized a centrally located microphone, was implemented.  Mr. Popovich used a headset to hear proceedings during these hearings.

36.     On October 23, 1992, Mr. Popovich informed Referee Schoby that he was experiencing an ear infection as a result of extended use of the headset provided by the court.  As a result, the auxiliary aid was no longer effective.

37.     Plaintiff moved for a continuance of 10 days to allow time for his condition to improve.  Attached to the Motion For Continuance was a copy of a letter from Mr. Popovich's physician stating that Mr. Popovich had been under the doctors care for the ear infection and that Mr. Popovich's condition was expected to improve in 3-4 weeks.

38.     At an attorney's conference on October 29, 1992, Referee Schoby asked Mr. Popovich's attorney to submit a written report from Mr. Popovich's physician on the diagnosis, prescribed treatment and prognosis for Mr. Popovich's ear condition.  Referee Schoby further requested an estimate as to when hearings could resume.  The deadline for submission of this report was November 5, 1992 and the hearings were continued until December 1, 1992.

39.     On November 2, 1992 the court issued an order stating that auxiliary aids and services were required in the ongoing proceedings because of Mr. Popovich's hearing disability.  Services were to be provided through the Cleveland Hearing and Speech Center.

40.     On November 10, 1992, counsel for Mr. Popovich filed a Motion requesting a decision on the domestic violence issue which could result in the return of Mr.

7

Popovich's daughter.  Plaintiff Lauren Popovich was never consulted regarding this motion, nor did she authorize any opposition to this motion.  This motion was not ruled upon during the pendency of the 'custody case" until April 24, 1998 (after the trial of Joseph Popovich's Federal Discrimination lawsuit)

41.     At the beginning of the December 1, 1992 hearing, Mr. Popovich's counsel informed the court that Plaintiff was still experiencing hearing difficulties and that the FM system used during the earlier proceedings was no longer able to accommodate Mr. Popovich's changing hearing condition.  Further, at the same hearing it was requested that the court immediately reconvene the custody hearing so Mr. Popovich could see his daughter.  It was requested that the court provide him with computerized real-time captioning of the court proceeding or some other instantaneous transcription process.

42.     In response to Mr. Popovich's counsel's motion, Referee Schoby gave Mr. Popovich two options.  Plaintiff could "withdraw his motion for a hearing accommodation and …[the court] could proceed today with the continued hearing" or Referee Schoby could "schedule a hearing to determine the extent of his hearing disability and what, if any, accommodations needed to be made for that."

43.     Mr. Popovich's counsel informed the court that Mr. Popovich's hearing loss was so substantial that he could not fully comprehend what was going on in the proceeding and that he would rather proceed with a hearing on an appropriate accommodation.  The referee scheduled a hearing for February 1, 1993.

44.     Department of Justice Civil Right Section (CRS) notified the court on December 2, 2993 of the charges of discrimination and the commencement of their investigation.

45.     On January 25, 1993, CRS made an inquiry to the court by telephone regarding the purpose of the February 1, 1993 accommodation hearing.  Subsequently, the Court canceled this hearing and refused to conduct any further proceedings pending the completion of the CRS' investigation and notification to the court that it has met its responsibilities with respect to the ADA.

46.     On February 19, 1993, CRS instructed the court to recommence the proceedings without undue delay and not to use the pending investigation as a reason to delay the proceedings.

47.     On March 24, 1993, CRS again instructed the court to resume proceedings and not use the investigation as a reason to delay the custody proceedings.

48.     On May 28, 1993, CRS sent a letter to the court requesting a response to Mr. Popovich's allegation.

49.     On June 30, 1993 the Defendant responded in a letter to CRS as follows:

> If [Mr. Popovich] wishes to bring a different type of auxiliary aid with him to court, at his own expense, he is certainly free to do so.  However, the court has met its legal obligation with respect to reasonable accommodation, and is prepared today as it was last December to proceed with all matters pending before it with the system it provided in the September and October hearings, or with any other item which [Mr. Popovich] wishes to provide.

50.     On June 1, 1993, Mr. Popovich's ex-wife file a motion requesting that the court continue the ex parte order which had been issued on August 25, 1992.  Mr. Popovich's ex-wife indicated that "the current federal investigation has effectively stayed ongoing proceedings."  Plaintiff was never advise of this motion by her guardian ad litem and never authorized, expressly or impliedly, her guardian ad litem to consent to the status quo.

51.     On June 16, 1993, Judge Gallagher, over Mr. Popovich's objection extended the ex parte order.

52. Plaintiff was not allowed to visit, either supervised or unsupervised with her father from August 1992 until the fall of 1997. Further, was denied any telephone contact or contact of any nature from October 1999 until the fall of 1997.

53. On March 31, 1994, CRS informed the Defendants, that the court could hold an ex parte hearing or an informal hearing to determine the appropriate auxiliary aid, the nature of Mr. Popovich's disability and the justification for a different auxiliary aid.

54. Judge Russo did not hold a conference until August 1, 1994 to discuss the auxiliary aids. At this conference, Mr. Popovich's counsel provided Judge Russo with medical information and pamphlets regarding the current status of Mr. Popovich's hearing deficiencies. The medical information reflected that Mr. Popovich had a sloping mild to moderately severe hearing loss is both ears, and a severe skin condition which seemed to be continuous into his ear canals.

55. On September 12, 1994, CRS wrote a letter to the county requesting that the court take corrective action no later than September 23, 1994. On October 7, 1994, the Defendant finally responded to CRS' request by stating that they had decided to order real-time transcription services for Mr. Popovich.

56. Mr. Popovich filed his own disability discrimination claim on March 23, 1995. The matter proceeded to jury trial commencing on March 30, 1998 and resulted in a Plaintiff's verdict.

57. The jury expressly found that Mr. Popovich had been the victim of intentional discrimination and retaliation.

58. Unfortunately, Mr. Popovich was not the only victim of the discriminatory acts of the Defendant. Plaintiff was denied access to her father, was unable to see her father for

upwards of five (5) years and assumed for many of those years that her father no longer wanted to see her.

        59.     Plaintiff as a party to the "custody case" had a right to due process in the resolution of the issues involving her custody.  Plaintiff had a right not to have her relationship with her father terminated and/or destroyed in its entirety for a period of five (5) years without appropriate due process.

## VI. CAUSES OF ACTION

## COUNT I

## (AMERICANS WITH DISABILITIES ACT)

        60.     Title II of the Americans with Disabilities Act and the corresponding Federal Regulations defines an individual with a disability as any individual who has a physical or mental impairment that substantially limits one or more major life activity, has a record of such an impairment, or is regarded as having such an impairment.  A major life activity includes hearing.  Mr. Popovich is disabled as defined under Title II of The Americans with Disabilities Act and the corresponding Federal Regulations, 29 C.F.R. Section 35.104.

        61.     Title II of the American with Disabilities Act requires a public entity to take appropriate steps to ensure that communication with a participant with a disability is as effective as communication with a participant who is not disabled.  The Code of Federal Regulations, section 35.160(b)(1) requires a public entity to provide appropriate auxiliary aids and services whenever necessary to afford an individual with a disability an equal opportunity to participate and enjoy the benefits of a service conducted by a public entity.

11

62.     The Cuyahoga County Court of Common Pleas, Domestic Relations Divisions, was required as a public entity to provide appropriate auxiliary aids and services to Mr. Popovich in order to afford him an opportunity to participate equally in the proceedings pending before the court and to avoid a denial of due process in matters involving the custody of his minor child.

63.     The ultimate responsibility for ensuring that an individual with a disability receives necessary auxiliary aids and services rests with the public entity, in this case the Court.

64.     The court must determine the appropriate auxiliary aid through the use of ex parte hearings or an informal meeting with the disabled individual.  The court may not conduct a full evidentiary hearing where opposing parties may participate.

65.     The conduct of the Defendant in (1) failing to reasonably accommodate Mr. Popovich after the original auxiliary aid became ineffective; and, (2) failing to provide real-time captioning or a suitable alternative at any time during the pendency of the domestic relations matters; (3) denying him due process on the basis of his disability and his request for accommodation are in violation of Title II of the American with Disabilities Act, 42 U.S.C. Section 12131, *et seq.*

66.     Plaintiff was discriminated in violation of Title II of the ADA by virtue of the defendant's (1) the refusal of the Defendant to accommodate her father; and, (2) refusal of the Defendant to proceed with the "custody case" on the basis of her father's request for accommodation.  This discriminatory conduct of the Defendant has resulted in a denial of Plaintiff's parental/filial relationship without due process.

67.     The Defendant conduct was done in intentional or reckless disregard of her statutorily and constitutionally protected rights.

12

## COUNT II

## (AMERICANS WITH DISABILITIES ACT – RETALIATION)

68.     Plaintiff incorporates by reference paragraphs 1-67 as if fully rewritten herein.

69.     Plaintiff is the daughter of an individual suffering from a disability as defined by the Americans with Disabilities Act and a defendant in a "custody case" in which her custody was the seminal issue.  Plaintiff's father, on behalf of himself, and separately on behalf of his minor child (Plaintiff), filed numerous charges of discrimination with the Department of Justice.

70.     As a direct and proximate result of the filing of these charges of discrimination, and the ensuing investigation, the Court retaliated against Plaintiff by staying the proceedings on the custody hearing and domestic violence charge.

71.     The resultant delay left Plaintiff unable to visit with her father for as much as five (5) years.  The actions of the Defendant in retaliation for the filing of a charge of discrimination were performed with deliberate and/or reckless indifference to Plaintiff's legal rights to be free of retaliation due to her association with an individual protected by the ADA and her constitutional right to due process.

## COUNT III

## (REHABILITATION ACT §504)

72.     §504 of the Federal Rehabilitation Act (29 U.S.C. §794) and the corresponding Federal Regulations defines an individual with a disability as any individual, who has a physical or mental impairment that substantially limits one or more major life activity, has

13

a record of such impairment, or is regarded as having such impairment.  A major life activity

includes hearing.  Mr. Popovich is disabled as defined under the Rehabilitation Act

73.     The Cuyahoga County Court of Common Pleas, Domestic Relations

Divisions, was required as a public entity, receiving federal funding, to (1) provide appropriate

auxiliary aids and services to Mr. Popovich in order to afford him an opportunity to participate

equally in the proceedings pending before the court; (2) to avoid denying him equal access to the

Court system; (3) to avoid discrimination against him on the basis of his disability and (4) to

provide Mr. Popovich with due process under the laws during his custody case and domestic

relations case..

74.     The ultimate responsibility for ensuring that an individual with a disability

receives necessary auxiliary aids and services rests with the public entity, in this case the Court

75.     The Rehabilitation Act provides a remedy to any person aggrieved by

virtue of the discriminatory conduct of the recipient of federal funding as it relates to the services

provided by that public entity.

76.     Plaintiff was aggrieved and suffered damage by virtue of the Defendant's

discriminatory conduct directed to her father.  Specifically, she was denied her right of

association with her father without due process.

77.     The Defendant conduct was done in intentional or reckless disregard of

her statutorily protected rights.

## COUNT IV

## (REHABILITATION ACT – RETALIATION)

78.     Plaintiff incorporates by reference paragraphs 1-77 as if fully rewritten

herein.

14

79.     Mr. Popovich is an individual suffering from a disability as defined by the Rehabilitation Act and filed numerous charges of discrimination with the Department of Justice on behalf of his daughter and himself individually.

80.     As a direct and proximate result of the filing of these charges of discrimination, his opposition of the unlawful discrimination by the Defendant and the ensuing investigation, the Court retaliated against Mr. Popovich by staying the proceedings on the custody hearing and domestic violence charge.  In so doing, the Defendant cause damage to the Plaintiff who had a constitutionally protected right to a continued association with her father which was denied with out due process.

81.     The resultant delay left Plaintiff unable to visit with her father for as much as five (5) years.  The actions of the Defendant in retaliation for the filing of a charge of discrimination were performed with deliberate and/or reckless indifference to Plaintiff's legal rights to be free of retaliation due to her association with an individual protected by the Rehabilitation Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this court:

(a)     Award compensatory damages pursuant to 42 U.S.C.

Section 12202 in the amount in excess of $75,000.

(f)     Award costs and attorneys fees; and

(g)     Grant such further relief as this court deems just and

proper.

Respectfully submitted,

_____
RICHARD C HABER, ESQ. (0046788)
Attorney for Plaintiff
REMINGER & REMINGER CO., L.P.A.
113 St. Clair Building
Cleveland, Ohio 44114
216/687-1311

## JURY DEMAND

Plaintiff demands a jury on all claims triable by jury.

_____
RICHARD C. HABER, ESQ. (0046788)